UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-02150-WYD

DANIEL J. SOMORA,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security[1],

    Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for Disability Insurance Benefits under the Social Security Act, 42 U.S.C. §§ 401-433, filed February 17, 2006 (docket #9). Plaintiff's application filed April 18, 2003, (transcript ["tr."] at 39-41), alleged that Plaintiff has been disabled since May 13, 2002, due to injuries sustained in a motor vehicle accident, and that he was 22 years old at the time of onset. (Tr. at 39). Plaintiff's application was denied and he filed a timely Request for Hearing. (Tr. at 33-38). A hearing was held on December 8, 2004. Following the hearing, Administrative Law Judge ("ALJ") Paul J. Keohane issued an unfavorable decision on February 24, 2005, finding that while Plaintiff is unable to perform any of his past work, he is able to make an adjustment to work which

---

[1] Michael J. Astrue, Commissioner of Social Security, has been substituted for former Commissioner Jo Anne B. Barnhart pursuant to FED. R. CIV. P. 25(d)(1).

exits in significant numbers in the national economy. (Tr. at 14-23). Plaintiff submitted a request for review, but the Appeals Counsel found no reason to review the ALJ's decision and denied his request for review on August 25, 2005. (Tr. at 7-10). Plaintiff timely filed an appeal in this Court, and the case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

II.     THE UNDERLYING DECISIONS

The ALJ found at step one of the five-step sequential analysis required by law that Plaintiff had not performed any substantial gainful activity ["SGA"] since the alleged onset date of disability, May 13, 2002. (Tr. at 18, 22).

At step two, the ALJ found that Plaintiff had severe impairments consisting of complex regional pain syndrome and reflex sympathetic dystrophy. (Tr. at 18, 22). While Plaintiff alleged that he suffers from sever depression, the ALJ found that Plaintiff had "only minimal limitations in his ability to perform basic work activities as a result of any depressive disorder," and that his alleged mental health impairment was not severe. (Tr. at 18, 22).

At step three, the ALJ found that Plaintiff's severe impairments, either singly or in combination with other impairments, did not meet or equal a Medical Listing. (Tr. at 19, 22).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC") and credibility, and found that Plaintiff retained the RFC "to perform a significant range of light exertional work." (Tr. at 19-22). In addition, the ALJ noted that despite Plaintiff's claims that he is disabled and unable to work due to back and leg pain, Plaintiff

maintains "a fairly active lifestyle," including performing various chores and household activities, driving back and forth between Denver and Colorado Springs, and attending college as a full time student. (Tr. at 20). The ALJ further noted that Plaintiff has not sought medication for his pain complaints, and has been noted to have a "possible somatic component to his pain complaints," and a "strong motivation to seek disability benefits" based on his past earnings and in light of his current personal injury litigation. (Tr. at 20). The ALJ concluded that "[d]ue to the inconsistencies in the record and the minimal objective findings to support the degree of pain and functional limitation alleged by the [Plaintiff], the undersigned finds the [Plaintiff's] subjective allegations of pain are not fully credible." (Tr. at 21, 22).

Proceeding to step four, the ALJ found that Plaintiff is unable to perform any of his past, relevant work, including work as a delivery driver and a car detailer, "both of which are medium jobs as generally performed in the national economy, and are low end semi-skilled and unskilled, respectively." (Tr. at 21, 22).

The then turned to an assessment at step five of whether Plaintiff could perform other work that exists in significant numbers in the national economy. The ALJ noted that Plaintiff is currently 25 years old and is, therefore, defined as a "younger individual between the ages of 18 and 44" pursuant to 20 C.F.R. § 404.1563. (Tr. at 21, 22). The ALJ further found that Plaintiff "has a high school education and no transferable skills." (Tr. at 21, 23). Because Plaintiff is limited to performance of "less than a full range of light work," the ALJ elicited additional testimony from a Vocational Expert ("VE"). The VE who testified found that a hypothetical person with Plaintiff's age, education, work

history, and residual functional capacity, "would remain capable of performing work as a small products assembler, numbering 867 jobs in the regional economy of Colorado and 48,000 jobs nationwide, a food and beverage order clerk, numbering 576 jobs in the regional economy and 9,800 jobs nationwide, and a cafeteria attendant, numbering 1,974 jobs in the regional economy and 98,7000 jobs nationwide, as these jobs are described in the Dictionary of Occupational Titles, (DOT)." (Tr. at 22). Thus, the ALJ concluded that there are a significant number of jobs in the national economy that Plaintiff can perform given his RFC, that Plaintiff is capable of "making a successful adjustment to work that exists in significant numbers in the national economy," and is "not disabled." (Tr. at 22, 23).

III.   ANALYSIS

   A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### B.    Whether the ALJ's Decision is Supported by Substantial Evidence

My review of the record reveals errors that require the Commissioner's decision to be reversed and remanded for a rehearing.

#### 1.    Whether the ALJ Erred By Finding that Plaintiff's Mental Impairment is Not "Severe"

Plaintiff first complains that the ALJ erred in determinating that his alleged mental health impairment is not "sever" at step two of the five step sequential analysis.

To meet his burden at step two, Plaintiff must demonstrate the existence of an impairment or combination of impairments that significantly limits his ability to do basic work activities. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997); *see also* 20 C.F.R. §§ 404.1521(a); 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities"). "Only 'slight' impairments, imposing only a 'minimal effect on an individual's ability to work' are considered 'not severe.'" *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *1 (10th Cir. 2004); (citing Social Security Ruling 85-28, 1985 WL 56856, at *3); *see also* SSR 03-3p, 2003 WL 22813114, at *2. "In light of these definitions, case law prescribes a very limited role for step two analysis." *Id.* at *2. "Step two is designed 'to weed out at an early stage of the administrative process those

individuals who cannot possibly meet the statutory definition of disability.'" *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring)). "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.* (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.2004)).

Plaintiff maintains that he established that his mental impairments are severe. According to Plaintiff, the record before the ALJ reflects that he has struggled with depression since his accident, and that this depression was diagnosed by four different physicians, his treating psychologist and his treating chiropractor. (Tr. at 92, 104, 105, 106, 110, 296, 328). In addition, Plaintiff notes that he has received regular mental health treatment from Dr. Gary Cosel, Psy.D. since 2002. Defendant responds that Plaintiff's allegations, diagnoses, and treatment for medically determinable impairments are not controlling, and that the ALJ properly found that Plaintiff's depression did not significantly affect his ability to perform basic work activities. Upon review of the record, I find that the ALJ's conclusion that Plaintiff's mental impairments were not "severe" is not supported by substantial evidence.

First, the ALJ erred in concluding that the majority of Plaintiff's complaints to Dr. Cosel "have been physical in nature." (Tr. at 18). Dr. Cosel's records show that Plaintiff initially sought treatment for depression, memory problems, irritability, problem concentrating and other complaints. (Tr. at 303). During the course of Plaintiff's treatment, Dr. Cosel administered the Beck Depression Inventory II, and noted that

Plaintiff was suffering from severe depression. (Tr. at 251, 298). A review of the record indicates that while Plaintiff's pain contributed to his depression, mental health was clearly the focus of his treatment with Dr. Cosel. (Tr. at 194-309).

In addition, the ALJ erred in concluding that Plaintiff has not "has not required any regular psychiatric medications for his depressive symptoms." (Tr. at 18). The record reveals that Plaintiff was prescribed Amitriptyline, Pamelor, Zoloft, and Celexa, all medication used to treat depression and anxiety. (Tr. at 172, 169, 157, and 156). In their response brief, Defendant acknowledges that Plaintiff was prescribed antidepressant medication from February 11, 2003, through at least January 2004, but contends that the ALJ's reliance on this factor was harmless. However, the ALJ also placed significant weight on a mini mental status examination administered by Dr. Cosel, which stated that Plaintiff has a normal fund of information, intact judgment and insight, and low average intellectual functioning. The record indicates that this status examination occurred in August 2003. However, Dr. Cosel later opined in his medical source statement that the status examination "was performed under ideal non-stress conditions. If required to work 40 hours per week [Plaintiff's] pain, anger and depression would [increase] significantly. Frustration tolerance and cognitive skills would significantly decline." (Tr. at 207-208, 195).

Third, and most significant, the ALJ erred in giving little weight to Dr. Cosel's medical source statement ("MSS"). In the MSS, Dr. Cosel concluded that Plaintiff's depression caused a number of "moderate" functional limitations, as well as symptoms that ranged from "mild" to "marked" found that Plaintiff suffered from memory problems

and difficulties with problem solving, and if required to work 40 hours per week, Plaintiff "would be able to tolerate Monday and Tuesday, but the remainder of the work week, in all likelihood would be unproductive and unmanageable." (Tr. at 194-199). The ALJ dismissed this information, stating that Dr. Cosel's assessment "appears to be based in large part on the [Plaintiff's] subjective complaints of pain," and "[a]s Dr. Cosel is not qualified to assess the [Plaintiff's] physical impairments, little weight is therefore given to the opinion of Dr. Cosel." (Tr. at 18).

As discussed above, while Dr. Cosel noted that Plaintiff's physical pain contributed to his depression, his assessment of Plaintiff's mental limitations was not based solely on Plaintiff's complaints of pain. Moreover, the Tenth Circuit has recognized that "[a] psychological opinion . . . 'may rest either on observed signs or on psychological tests.'" *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759, 2005 WL 2114163 (10th Cir. 2005). "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements . . . . [t]he ALJ cannot reject [a psychiatrist's] opinion solely for the reason that it was based on [the claimant's] responses because such rejection impermissibly substitutes [the ALJ's] judgment for that of [the psychiatrist]." *Id.*, 147 Fed. Appx. at 759-60. It was improper for the ALJ to reject Dr. Cosel's assessment simply because it was based in part on Plaintiff's subjective complaints.

In conclusion, I find that Plaintiff met his burden of showing that his mental impairment is "severe" under the *de minimus* showing required at step two. Therefore, the ALJ's finding that Plaintiff does not have a severe mental impairment is reversed,

and the matter remanded for reconsideration of Plaintiff's RFC, that includes consideration of his mental limitations.

> 2. Whether the ALJ Improperly Rejected Several Treating and Examining Source Opinions Regarding the Plaintiff's Functional Limitations

Plaintiff next asserts that the ALJ improperly rejected the opinions of Dr. Cosel and Dr. Michael Goldbaum, two of Plaintiff's treating physicians, in analyzing Plaintiff's functional limitations.  As discussed above, Dr. Cosel concluded that Plaintiff's depression caused a number of "moderate" functional limitations, and that Plaintiff could not tolerate full-time work.  (Tr. at 194-199).  the ALJ gave little weight to Dr. Cosel's opinions, and instead gave weight to Dr. Donald G. Glasco, a state agency psychiatrist who, based only on his review of the record, determined that Plaintiff's mental condition was not severe and caused no more than mild functional limitations.  (Tr. at 18, 140-153).  The ALJ also gave little weight to the Dr. Goldbaum's opinion that Plaintiff is "capable of working four hours a day at sedentary to light duty work responsibilities."  The ALJ rejected Dr. Goldbaum's opinion because "the claimant's own daily activities fail to support a need for more than usual breaks."  (Tr. at 21).

.       An ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'"  *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted); *see also* 20 C.F.R. § 404.1527(d)(2).  "When a treating

physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around." *Goatcher v. United States Department of Health and Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1994) (quoting *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir.1988). "[T]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). "In addition, the ALJ must consider the following specific factors to determine what weight to give any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Goatcher*, 52 F.3d at 290 (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

As previously noted, the ALJ failed to provide a legitimate reason for rejecting Dr. Cosel's opinions in favor of Dr. Glasco's opinions. The ALJ was not entitled to reject Dr. Cosel's assessment because it was based in part on Plaintiff's subjective complaints. In addition, the ALJ failed to give specific, legitimate reasons for rejecting Dr. Goldbaum's opinions. Moreover, the ALJ's stated reason for rejecting Dr.

Goldbaum's opinions is not consistent with the record.  In regard to Plaintiff daily activities, the record contains evidence that Plaintiff required frequent, unscheduled breaks during class, and while driving long distances, and that it now takes Plaintiff twice as long to complete certain tasks.  (Tr. at 452-56).

I conclude that the ALJ improperly rejected the opinions of Dr. Cosel and Dr. Goldbaum regarding Plaintiff's functional limitations.

### 3. Whether the ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff next asserts that the ALJ's determination that he "retains the residual functional capacity to perform a significant range of light work," including the ability to lift or carry up to 20 pounds occasionally and 10 pounds frequently, and to sit for at least 6 hours in an 8-hour workday, and stand or walk up to 6 hours in an 8-hour workday, is not supported by substantial evidence.  (Tr. at 21).  In assessing Plaintiff's RFC, the ALJ determined that Plaintiff's subjective allegations of pain are not fully credible, based on evidence concerning his daily activities and his lack of interest taking pain medication.  (Tr. at 19-20).  The ALJ also found that this RFC is consistent with the opinions of Dr. Peters and Dr. Griffis.

According to Plaintiff, the ALJ's assessment is flawed in several respects.  First, Plaintiff contends that the RFC is not consistent with the opinions provided by Drs. Peters and Griffis, and that the ALJ's conclusion that he can stand or walk up to 6 hours in an 8-hour workday is not supported by substantial evidence.  Plaintiff also asserts that the ALJ's findings regarding his refusal of prescription medication and his

-11-

school activities are not supported by substantial evidence in the record.  The

Commissioner contends that the ALJ properly considered all of the evidence, both

medical and non-medical in assessing Plaintiff's RFC .

With respect to Dr. Peters' and Dr. Griffis' opinions, the ALJ stated that his

conclusion that Plaintiff "retains the residual functional capacity to perform a significant

range of light work," is "consistent with the opinion of Dr. Peters, who believed the

claimant to be capable of light exertional work, as well as the opinion of Dr. Griffs, who

also assessed the claimant with the ability to perform light work, "beginning on a more

restricted basis and gradually returning to 8 hours a day."  (Tr. at 21).   Plaintiff objects

to this conclusion and notes that in Dr. Peters' report states:

> I agree with a program of chiropractic therapy accompanied
> by gentle activity and I think his working light duty as a
> deliveryman would be good.  I would limit his lifting to no
> more than 15 pounds at present, however.

(Tr. at 112).

Dr. Griffis stated in his report:

> I do not believe [Plaintiff] can return to his work as a driver
> at this time.  He is unable to sit for prolonged periods of time
> and he has difficulty walking.  I recommend he perform light
> duty work.  He will need to change positions frequently.  I
> also recommend he begin working part-time and graduate
> his hours from a four-hour day up to six hours a day and
> then eight hours a day slowly.

According to Plaintiff, Dr. Peters' statement that Plaintiff could return to "light duty," and

Dr. Griffis' statement that he can perform "light duty work" is not evidence of his ability

to return to "light exertional work" as that term is defined by the Social Security

Administration.  The Social Security Administration defines "light work" as work that

involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

I agree with Plaintiff that the opinions of Dr. Peters and Dr. Griffis do not support, and in some cases conflict with, the ALJ's assessment of Plaintiff's RFC. Neither Dr. Peters nor Dr. Griffis found that Plaintiff could work full-time, 8 hours a day for five days a week, on a regular and continued basis, particularly in a job that requires a good deal of walking or standing. Dr. Griffis specifically stated that Plaintiff is unable to sit for prolonged periods of time, has difficulty walking, and needs to change positions frequently.

Plaintiff also challenges the ALJ's conclusion that he retains the ability to stand and walk for six of eight hours, and contends that pain, numbness, and weakness in his left lower extremity prevent him from standing and walking for prolonged periods. There is evidence in the record that Plaintiff has difficulty walking, including Plaintiff's testimony that it hurts to walk, and that he is only able to walk for a few minutes due to pain. (Tr. at 440). As discussed above, Dr. Griffis remarked in his report that Plaintiff "has difficulty walking." In addition, several medical providers have reported that Plaintiff walks with an antalgic gait including Dr. Goldbaum and Dr. Timothy (Tr. at 116,

-13-

160, 164, 175, 184, 190, and 420).  In addition, Dr. Cosel consistently reported that Plaintiff was "still dragging the left foot, somewhat" while walking, "having difficulty with walking" has "problems being able to pick up and move the left leg and foot," and unable to put the majority of weight on his left leg.  (Tr. at 357, 364, 371).

The ALJ's conclusion that Plaintiff could walk and stand for six of eight hours, appears to be based on a lack of objective findings from two MRIs, EMG testing and various X-rays, and the ALJ's conclusion that Plaintiff's subjective complaints of pain were not entirely credible given his daily activities and his refusal of prescription medication.  In regard to the lack of objective medical findings to support Plaintiff's complaints of pain, Plaintiff notes that both Dr. Griffis and Dr. Peters diagnosed Plaintiff with complex regional pain syndrome (CRPS) of the left lower extremity, which is consistent with a lack of objective medical findings.  (Tr. at 93, 105).  In addition, the ALJ's finding regarding Plaintiff's refusal to take prescription medication for his pain is entirely unsupported by the record.  The record reveals that while Plaintiff resisted taking certain medications because of a concern about possible side effects, Plaintiff was, in fact, utilizing several different prescription medications.  (Tr. at 110, 155, 157, 166, 182, 269, 273).  Finally, to the extent the ALJ equated Plaintiff's school activities with the ability to work full-time and perform a significant range of light work, this conclusion is not supported by substantial evidence in the record.  The record reflects that Plaintiff takes attends classes two days per week, and attends two classes - one lasting one hour, and the other lasting up to four and one-half hours.  (Tr. at 430-32). In addition, Plaintiff testified that he is able to get up and walk around during the four-

hour class.  (Tr. at 452).

IV.     CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g).

Dated September 27, 2007

                                      BY THE COURT:

                                      s/ Wiley Y. Daniel
                                      Wiley Y. Daniel
                                      U. S. District Judge